|  |  |  |
|---|---|---|
| DIONTA McBRIDE, | ) | |
| Plaintiff, | ) | |
| vs. | ) | NO. 3:15-CV-00559 |
| OFFICER CHAD ODLE, OFFICER BRANDON ROUNDTREE, OFFICER ANDREW WHITMEYER, and SGT. BRIAN SCHROTH, | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion to Summary Judgment, filed on April 3, 2017 (DE #15). For the reasons set forth below, Defendants' motion for summary judgment (DE #15) is **GRANTED**. The Clerk is **DIRECTED** to close this case.

BACKGROUND

Plaintiff Dionta McBride ("Plaintiff") filed a complaint in alleging that Elkhart Police Department officers Chad Odle, Brandon Roundtree, and Andrew Whitmeyer, and Sergeant Brian Schroth (together, "Defendants") subjected him to false arrest, false imprisonment, and unreasonable search in violation of Fourth Amendment and 42 U.S.C. § 1983 in connection with a traffic stop

on May 5, 2014. Defendants filed motion for summary judgment based on Federal Rule of Civil Procedure 56(d). The motion is fully briefed and are ripe for adjudication.

DISCUSSION

Summary Judgment Standard

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. To determine whether a genuine dispute of material fact exists, the Court must construe all facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010).

A party opposing a properly supported summary judgment motion may not rely on allegations in her own pleading but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.,* 621 F.3d 651, 654 (7th Cir. 2010). "[I]nferences relying on mere

speculation or conjecture will not suffice." *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009) (citation omitted). If the nonmoving party fails to establish the existence of an essential element on which he bears the burden of proof at trial, summary judgment is proper. *See Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006).

Undisputed Facts

In May 2014, Plaintiff, a resident of Texas, was in Elkhart for the purpose of recording a comedy CD and performing comedy live at various locations in Elkhart. (Defs. Ex. A, at 14, 46-48.) While in Elkhart, Plaintiff drove his sister's vehicle, a dark blue Dodge Intrepid ("Intrepid"). (*Id*. at 57.) On May 5, 2014, Plaintiff was at the house located at 2301 South 6th Street in Elkhart, Indiana ("Residence"). (*Id*. at 46.) He was there to use a recording studio located in the basement of the Residence. (*Id.* at 46-47.) Plaintiff had visited the Residence approximately three times for the purpose of utilizing the recording studio. (*Id*. at 50.) He did not know who owned or lived in the Residence, and was only familiar with the producer with whom he was working during the studio sessions. (*Id*. at 50-51.)

On May 5, 2014, defendant Sergeant Brian Schroth ("Schroth") was a member of the Elkhart Police Department Drug Unit, which was conducting a short term drug investigation into the Residence. (Defs. Ex. B, ¶¶ 1-3.) That day, a confidential informant had

purchased marijuana at the Residence. (*Id.*, ¶4.) At 9:00 a.m., Schroth drove past the Residence and observed a dark blue Dodge Intrepid bearing Indiana license plate RLO899 parked in the driveway of the Residence. (*Id.*, ¶5.) Schroth ran the license plate and it was registered to Donisha McBride, Plaintiff's sister. (*Id.*) Several times throughout the day, Schroth drove past the Residence and observed the Intrepid parked in the driveway. (*Id.*, ¶6.)

On May 5, 2014, Plaintiff arrived at the Residence at approximately 5:30 p.m. and was there for approximately one hour and twenty minutes. (Defs. Ex. A, at 59-60.) He had driven the Intrepid there and parked it in the driveway. (*Id.* at 65.) Plaintiff saw Steven Randall ("Randall") inside the Residence. (*Id.* at 61.) Plaintiff had no knowledge of any illegal activity occurring in the Residence and had never personally seen drugs, drug use, or drug sales occurring at the Residence. (*Id.* at 56-57.)

At approximately 6:30 p.m., Schroth and defendant Officer Andrew Whitmeyer ("Whitmeyer") were conducting surveillance on the Residence and observed the Intrepid backed into the driveway. (Defs. Ex. B, ¶7.) Schroth then observed a black male, later identified as Randall, exit the Residence and leave in the Intrepid. (*Id.*, ¶8.) Schroth and Whitmeyer followed Randall to a store, then to a gas station and back to the Residence. (*Id.*)

At approximately 7:28 p.m., Schroth and Whitmeyer observed a black male exit the Residence and leave in the Intrepid. (*Id.*, ¶9.) Schroth and Whitmeyer followed the Intrepid to West Lusher Avenue, where they directed defendants Corporal Brandon Roundtree ("Roundtree") and Corporal Chad Odle ("Odle") of the Elkhart Police Department to execute a traffic stop of the Intrepid "for visiting a common nuisance" at the Residence. (*Id.*, ¶10.) Schroth and Whitmeyer requested that Roundtree and Odle execute the traffic stop because they were in uniform and a marked squad car, as required by Elkhart Police Department general orders. (*Id.*, ¶11.) The driver of the Intrepid was identified as Plaintiff. (*Id.*, ¶12.)

Roundtree and Odle conducted a traffic stop of the Intrepid as directed. (Defs. Ex. C, ¶¶2-3.) When Plaintiff saw the police put their lights on and pull up behind him, he immediately pulled over near a stoplight on Oakland. (Defs. Ex. A, at 67.) Another marked car and an unmarked minivan pulled up behind the first officer. After Roundtree and Odle executed the traffic stop, Schroth and Whitmeyer took over the stop. (Defs. Ex. C, ¶4.) Plaintiff was not asked to produce identification. (Defs. Ex. A at 70.) Plaintiff was ordered out of the car, handcuffed, searched, and placed in the back seat of Roundtree's police car. (*Id.* at 72.) While performing the outer clothing pat-down on Plaintiff for possible weapons, Schroth located $2,100 in cash on

Plaintiff. (Def. Ex. B, ¶13.) Plaintiff was stopped and arrested for visiting a common nuisance because he was seen exiting the Residence where a confidential informant had purchased drugs. (*Id.*, ¶14.) Plaintiff asked Roundtree if he could retrieve Plaintiff's prescription anxiety medication from the Intrepid, but Roundtree did not do so. (Defs. Ex. A, at 80-81.)

Roundtree placed Plaintiff in his police car and drove Plaintiff back to the Residence without explaining why he was being detained. (*Id.* at 79-81.) Upon returning to the Residence, a search was conducted of the Residence with a search warrant that had been previously obtained. (Defs. Ex. B, ¶15.) The Drug Unit found marijuana, a white powdery substance, drug paraphernalia, baggies and a scale, all of which were in plain sight throughout the Residence. (*Id.*) Plaintiff sat in the back of the police car at the Residence for two and one-half hours. (Defs. Ex. A at 82.) At the end, the police put Randall into the back of the car with Plaintiff. (*Id.* at 84.) While sitting in the police car with the windows rolled up and no air conditioning on, Plaintiff began to suffer an anxiety attack. (*Id.* at 81-84.)

Roundtree drove Plaintiff and Randall to the Elkhart police station. (*Id.* at 87.) Once inside the station, Plaintiff went through processing, including a search of his person by Roundtree. (*Id.* at 88-89.) As Roundtree was booking Plaintiff, he discovered a plastic bag containing a green, leafy substance that he believed

to be marijuana in the front pocket of his sweatshirt. (Defs. Ex. C, ¶6.) Roundtree turned the substance over to Whitmeyer for further testing. (*Id.*)

Plaintiff was charged with felony possession of marijuana and visiting a common nuisance. (Defs. Ex. B, ¶17.) He was held for two days in jail and did not learn of the charges until he was bonded out of jail. (Defs. Ex. A. at 98-99.) On January 30, 2015, the Elkhart Superior Court granted Plaintiff's motion to suppress evidence found on Plaintiff or in his vehicle. (Pl. Ex. B.) The State then moved to dismiss all charges against Plaintiff. (Pl. Ex. C.)

ANALYSIS

Plaintiff claims that Defendants falsely arrested, falsely imprisoned, and unreasonably searched him in violation of the Fourth Amendment and Section 1983. A plaintiff may bring a cause of action under 42 U.S.C. § 1983 against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. In order to prevail on a Section 1983 claim, a plaintiff must show that he "was deprived of a right secured by the Constitution or federal law" "by a person acting under color of law." *Thurman v. Vill. of*

*Homewood,* 446 F.3d 682, 687 (7th Cir. 2006). The Fourth Amendment to the United States Constitution provides protection against unreasonable searches and seizures. U.S. Const. amend. IV.

Personal Involvement

As an initial matter, "[Section] 1983 lawsuits against individuals require personal involvement in the alleged constitutional deprivation to support a viable claim." *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003) (citations omitted). It is undisputed that neither Odle nor Whitmeyer searched Plaintiff. Therefore, Odle and Whitmeyer do not have the requisite personal involvement required to be liable for Plaintiff's unreasonable search claim.[1]

In his response brief, Plaintiff mentions in passing that searches of the car he was driving were unreasonable. (*See, e.g.,* DE #17 at 5.) Even if his complaint included a claim for an unreasonable search of a vehicle (which it does not), Plaintiff proffers no evidence whatsoever to support this claim. Because there is no evidence in the record that any of the Defendants were personally involved in allegedly unreasonable searches of Plaintiff's vehicle, Plaintiff cannot show individual liability under Section 1983 for such claim.

---

[1]The Court need not address Defendants' argument that Roundtree and Odle lacked personal involvement as to Plaintiff's false arrest and imprisonment claims because, for the reasons below, it finds that they are entitled to qualified immunity.

Defendants argue that Plaintiff's Section 1983 claims fail because they had probable cause to arrest him for visiting a common nuisance, and even if they did not, they are entitled to qualified immunity. "Probable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest, false imprisonment, or malicious prosecution." *Mustafa v. City of Chicago,* 442 F.3d 544, 547 (7th Cir. 2006) (citation omitted). "Police ordinarily have probable cause if, at the time of the arrest, the facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Smith v. Gomez*, 550 F.3d 613, 618 (7th Cir. 2008) (citations and internal quotation marks omitted). "[P]robable cause—the area between bare suspicion and virtual certainty—describes not a point but a zone within which reasonable mistakes will be excused." *Sheik-Abdi v. McClellan,* 37 F.3d 1240, 1246 (7th Cir. 1994) (internal citations and quotation marks omitted). "[C]ourts evaluate probable cause not on the facts as an omniscient observer would perceive them but on the facts as they would have appeared to a reasonable person in the position of the arresting officer —seeing what he saw, hearing what he heard." *Id*. (citations and quotation marks omitted). "The probable cause

determination must be made by a jury if there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them." *Chelios v. Heavener,* 520 F.3d 678, 686 (7th Cir. 2008) (citation and internal quotation marks omitted). Here, Plaintiff "carries the burden of establishing the absence of probable cause." *McBride v. Grice*, 576 F.3d 703, 706 (7th Cir. 2009) (citations omitted).

"Qualified immunity protects public servants from liability for reasonable mistakes made while performing their public duties." *Findlay v. Lendermon*, 722 F.3d 895, 899 (7th Cir. 2013) (citation omitted); *see Mullenix v. Luna,* 136 S. Ct. 305, 308, 193 L.Ed.2d 255 (2015) (Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."). "To overcome the defendant's invocation of qualified immunity, the plaintiffs must show both (1) that the facts make out a constitutional violation, and (2) that the constitutional right was 'clearly established' at the time of the official's alleged misconduct." *Abbott v. Sangamon Cty., Ill.,* 705 F.3d 706, 713 (7th Cir. 2013) (citations omitted). "[C]ourts now have discretion to grant immunity on the basis that the right was not clearly established without determining whether there was a violation in the first place." *Id*. (citations omitted).

"The probable-cause standard inherently allows room for reasonable mistakes," "but qualified immunity affords an added

layer of protection by shielding officers from suit for damages if a reasonable officer could have believed [the arrest] to be lawful, in light of clearly established law and the information the [arresting] officers possessed." *Id.* at 714 (citations and quotation marks omitted). "Often termed 'arguable probable cause,'" "qualified immunity in this context protects officers who reasonably but mistakenly believe that probable cause exists." *Id*. at 714-15 (citations omitted). "The existence of probable cause or arguable probable cause depends, in the first instance, on the elements of the predicate criminal offense(s) as defined by state law." *Id*. at 715 (citations omitted).

Defendants maintain that they had probable cause to arrest Plaintiff for the offense visiting a common nuisance. At the time of Plaintiff's arrest, visiting a common nuisance was a Class B misdemeanor under Indiana Code § 35-48-4-13.[2] *See* Ind. Code § 35-48-4-13(a) (2013) ("A person who knowingly or intentionally visits a building, structure, vehicle, or other place that is used by any person to unlawfully use a controlled substance commits visiting a common nuisance, a Class B misdemeanor."). "The question is whether there was probable cause that the location was a common nuisance and that [Plaintiff] was visiting it." *United States v. Sims*, No. 2:06-CR-85 PS, 2006 WL 3386718, at *3 (N.D. Ind. Nov.

---

[2] Section 35-48-4-13 was repealed by P.L. 59-2016, SEC. 8, effective July 1, 2016.

20, 2006).  Where an officer "has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."  *Ray v. City of Chicago*, 629 F.3d 660, 663 (7th Cir. 2011) (citation omitted).

On the day of Plaintiff's arrest, Schroth was a member of the Elkhart Police Department Drug Unit ("Drug Unit"), and was investigating the Residence.  That day, a confidential informant had purchased marijuana from the Residence.  Schroth observed Plaintiff's Intrepid in the driveway of the Residence several times that day.  Schroth and Whitmeyer observed the Intrepid in the driveway, and saw Plaintiff leave the Residence in the Intrepid at approximately 7:28 p.m.  Schroth and Whitmeyer followed Plaintiff in the Intrepid, and directed Roundtree and Odle to stop him for visiting a public nuisance.  They arrested Plaintiff for visiting a public nuisance, placed him in a police car, and returned to the Residence.  Plaintiff remained in the police car while the Drug Unit conducted a search of the Residence pursuant to a search warrant.  During that search, marijuana and other drug paraphernalia were found in plain sight throughout the Residence. While Plaintiff asserts that he lacked knowledge of the drug activity at the Residence, the Court is to consider the facts known to the officers, not Plaintiff, at the time of the arrest in determining probable cause.  *See Tebbens v. Mushol*, 692 F.3d 807,

816 (7th Cir. 2012) ("Whether [the officer] had probable cause depends on the facts known to him at the time of arrest.").

Plaintiff relies on two Supreme Court cases to argue that Defendants lacked probable cause to stop and detain him: *Michigan v. Summers*, 452 U.S. 692, 101 S. Ct. 2587, 69 L.Ed.2d 340 (1981), and *Bailey v. United States,* 568 U.S. 186, 133 S. Ct. 1031, 185 L.Ed.2d 19 (2013). *Summers* defined a category of cases in which detention is allowed without probable cause to arrest for a crime. It held that for Fourth Amendment purposes, "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." *Summers*, 452 U.S. at 705. In *Bailey,* the Court considered whether *Summers* justified detentions beyond the immediate vicinity of the premises being searched. 133 S. Ct. at 1038. In that case, the police had obtained a warrant to search a residence for a gun. *Id*. at 1036. The residence was under surveillance when the petitioner and another man exited the residence, entered a car parked in the driveway, and drove away. *Id*. The police followed the car for about a mile before pulling the car over. The police searched both men, handcuffed them, and returned them to the residence. *Id*. The petitioner was told that they were being detained incident to the execution of a search warrant of the residence. *Id*. The search of the residence recovered a gun and drugs in plain view,

and the petitioner was arrested. The Court found that the petitioner was detained "at a point beyond any reasonable understanding of the immediate vicinity of the premises in question." *Id*. at 1042. *Bailey* held that "[o]nce an individual has left the immediate vicinity of a premises to be searched . . . detentions must be justified by some other rationale." *Id*. at 1043.

Plaintiff argues that his case is similar to *Bailey*, in that he was detained nearly one mile from the Residence to be searched, had committed no traffic offense, was stopped, handcuffed, searched, and returned to the Residence. Defendants distinguish *Bailey* by offering another rationale for stopping and arresting Plaintiff: they had probable cause to believe that Plaintiff had committed the offense of visiting a common nuisance. Defendants proffer undisputed evidence that Schroth and Whitmeyer directed Roundtree and Odle to execute a traffic stop of Plaintiff's Intrepid for visiting a common nuisance because they saw Plaintiff leave the Residence where a confidential informant had purchased drugs. (Defs. Ex. B, ¶10, ¶14, ¶17; Defs. Ex. C, ¶3 (Roundtree and Odle executed the stop of Plaintiff as directed by Schroth "for visiting a common nuisance").) Plaintiff contends that Defendants did not have sufficient evidence to effectuate the stop or arrest because he was not known to officers or suspected of illegal activity. (DE #17 at 9 (citing *Matz v. Klotka*, 769 F.3d

517, 523 (7th Cir. 2014) ("[S]uspicion of illegal activity at a particular location does not transfer such a suspicion to an individual leaving the property.").) However, the evidence before the Court indicates that Schroth and Whitmeyer suspected Plaintiff of the offense of visiting a common nuisance because a confidential informant had purchased drugs at the Residence that day.

Plaintiff claims that Defendants' rationale of arresting him for visiting a public nuisance is disingenuous because "[o]ther vehicles had come and gone in the days and hours prior to the execution of the search warrant, and not one of them was stopped." (DE #17 at 8.) However, he proffers no evidence to support this assertion. He argues that he was improperly stopped nearly one mile from the Residence, but cites no authority to suggest that police were prohibited from making an arrest for visiting a common nuisance away from the location of the common nuisance. Plaintiff contends that Defendants stopped him not because he had visited a common nuisance, but because he left the Residence minutes before a search warrant was executed at the Residence. In support, he notes that Defendants brought him back to the Residence and held him in a police car there during the execution of the search warrant.

Plaintiff asserts that in his criminal case, the state court rejected the State's argument that "the officers had reasonable suspicion to stop the vehicle as it was fleeing a known drug house

and that they also had probable cause to arrest the defendant without a warrant" in its order granting Plaintiff's motion to suppress evidence.   (DE #17 at 8 (quoting Pl. Ex. B. at 4).) Defendants do not address the state court's order.  Aside from the sentence quoted by Plaintiff, the state court's order does not refer to Plaintiff visiting a common nuisance, or explain why the court did not find the State's argument persuasive.   The state court relied on *Bailey* to hold that the police were precluded from arresting and searching Plaintiff where there was no arrest warrant for Plaintiff, he had committed no traffic violation so as to justify stopping the vehicle a mile from the Residence, and the search warrant was confined to the Residence.  (Pl. Ex. B. at 5-6.)   "Under Indiana law, collateral estoppel bars subsequent litigation of an issue necessarily adjudicated in a former suit if the same issue is presented in the subsequent suit." *Best v. City of Portland*, 554 F.3d 698, 701 (7th Cir. 2009) (citations and internal quotation marks omitted).   To the extent that Plaintiff intended to argue that Defendants are collaterally estopped to asserting probable cause for his arrest, he fails to develop this argument in any meaningful way.   Therefore, the Court will not consider the issue of collateral estoppel. *See Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009) ("Perfunctory, undeveloped

arguments without discussion or citation to pertinent legal authority are waived.").[3]

The Court need not determine whether Defendants had probable cause to arrest and detain Plaintiff because a reasonable officer could have believed that probable cause existed to support the arrest. "Once a defendant raises the defense of qualified immunity, the plaintiff bears the burden of defeating it either by identifying a closely analogous case or by persuading the court that the conduct is so egregious and unreasonable that, notwithstanding the lack of an analogous decision, no reasonable officer could have thought he was acting lawfully." *Abbott,* 705 F.3d at 723-24 (citation omitted). Plaintiff contends that *Bailey* clearly established that it was unconstitutional to search and seize a citizen who was no longer in the immediate vicinity of a premises subject to a search warrant. As noted above, in *Bailey* the officers had followed the petitioner from a residence and then detained him incident to the execution of a search warrant of the residence. 133 S. Ct. at 1036. *Bailey* held that "[o]nce an individual has left the immediate vicinity of a premises to be searched . . . detentions must be justified by some other

---

[3] The Court also notes that several other courts have held that "a state criminal proceeding should not be used as a basis for offensive collateral estoppel when the state court had no reason to consider whether the officer would be entitled to qualified immunity from a civil suit." *Posey v. Pruger,* No. 10 C 3574, 2015 WL 5610764, at *4 (N.D. Ill. Sept. 22, 2015) (citing *Cannaday v. Sandoval*, 458 Fed. Appx. 563, 566-67 (7th Cir. 2012), and *Johnson v. Beckman*, 2013 WL 1181584, at *3-4 (N.D. Ill. March 21, 2013)).

rationale." *Id.* at 1043.  Here, it is undisputed that Schroth and Whitmeyer justified Plaintiff's arrest and detention by "some other rationale" than a detention incident to a search warrant, *i.e.,* they believed they had probable cause to arrest Plaintiff for visiting a common nuisance because they saw him leave the Residence where a confidential informant had purchased drugs.  Even if Schroth and Whitmeyer were mistaken in their belief that they had probable cause to arrest Plaintiff for this offense, a reasonable officer could have believed that probable cause existed to support the arrest in light of the law established in *Bailey*. Because Schroth and Whitmeyer had arguable probable cause to arrest Plaintiff, they are entitled to qualified immunity on Plaintiff's false arrest and false imprisonment claims.  *See Thayer v. Chiczewski*, 705 F.3d 237, 251 (7th Cir. 2012) ("The existence of arguable probable cause to arrest [plaintiff] is an absolute bar to his § 1983 claim for unlawful arrest and false imprisonment.").

Qualified immunity also applies to the false arrest and false imprisonment claims against Roundtree and Odle.  Plaintiff argues that Roundtree and Odle should have intervened to prevent the unlawful stop directed by Schroth and Whitmeyer, but instead effectuated the stop.  "[A]n officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know . . . that a citizen has

been unjustifiably arrested, or . . . that any constitutional violation has been committed by a law enforcement official; and the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005) (citation omitted). Defendants maintain that Roundtree and Odle had probable cause to stop Plaintiff at the direction of Schroth and Whitmeyer. "The collective knowledge doctrine permits an officer to stop, search, or arrest a suspect at the direction of another officer or police agency, even if the officer himself does not have firsthand knowledge of facts that amount to the necessary level of suspicion to permit the given action." *United States v. Williams,* 627 F.3d 247, 252 (7th Cir. 2010) (citation omitted). "The police who actually make the arrest need not personally know all the facts that constitute probable cause if they reasonably are acting at the direction of another officer or police agency. In that case, the arrest is proper so long as the knowledge of the officer directing the arrest, or the collective knowledge of the agency he works for, is sufficient to constitute probable cause." *United States v. Valencia*, 913 F.2d 378, 383 (7th Cir. 1990) (citations omitted). "[T]he collective knowledge doctrine means a defendant is entitled to qualified immunity if he relied in objective good faith on another officer as to the justification for the arrest." *Wilbon v. Plovanich*, 67 F. Supp. 3d 927, 940 (N.D. Ill. 2014). "[I]f there are no

circumstances that would lead a reasonable officer in the defendant's position to believe the officer directing the seizure cannot be trusted to assess probable cause, the defendant can rely on the lead officer in good faith and be accorded qualified immunity for any unlawful arrest." *Id.* at 940–41 (citations omitted).

It is undisputed that Roundtree and Odle executed the stop of Plaintiff's Intrepid at the direction of Schroth and Whitmeyer for visiting a common nuisance, and that Schroth and Whitmeyer did so because they saw Plaintiff leaving the Residence where a confidential informant had purchased drugs. This evidence suggests Roundtree and Odle relied in objective good faith on Schroth and Whitmeyer as to the justification for Plaintiff's arrest. Plaintiff argues that Roundtree and Odle should have known that the stop was unlawful because they were "required to transport [Plaintiff] back to [the Residence] for the purpose of detaining [him] during the execution of the search warrant." (DE #17 at 11.) He does not cite evidence in the record to support this statement, and the Court has seen no evidence that the officers were "required" to transport Plaintiff to the Residence. While it is undisputed that Defendants brought Plaintiff to the Residence after arresting him, this fact does not raise an issue as to whether a reasonable officer would believe that Schroth and Whitmeyer could not be trusted to assess probable cause. *See*

*Abbott,* 705 F.3d at 723-24 (plaintiff bears the burden of defeating qualified immunity). The undisputed evidence indicates that Roundtree and Odle relied in objective good faith on Schroth and Whitmeyer as to the justification for Plaintiff's arrest. Therefore, Roundtree and Odle are entitled to qualified immunity on Plaintiff's false arrest and false imprisonment claims. Since Roundtree and Odle are entitled to qualified immunity because they reasonably relied on Schroth and Whitmeyer, they are also not liable for Plaintiff's failure to intervene claim. *See Wilbon*, 67 F. Supp. 3d at 947 (where court found that defendants were entitled to qualified immunity because they reasonably relied on the other officers, they were not liable for failure to intervene); *Crawford v. City of Chicago*, No. 12 C 5289, 2014 WL 1661720, at *8 (N.D. Ill. Apr. 25, 2014) (dismissing plaintiff's failure to intervene claim against defendant officers after finding that they were entitled to qualified immunity for false arrest claim).

Regarding Plaintiff's unreasonable search claim, the evidence demonstrates that Schroth conducted an outer clothing pat-down for possible weapons after Plaintiff was arrested, and Roundtree searched Plaintiff as he was booking Plaintiff in at the Elkhart Police Department. The Fourth Amendment prohibits, with limited exceptions, warrantless searches. *See Arizona v. Gant*, 556 U.S. 332, 338, 129 S. Ct. 1710, 173 L.Ed.2d 485 (2009). "[O]fficers may perform searches incident to constitutionally permissible

arrests in order to ensure their safety and safeguard evidence."
*Virginia v. Moore*, 553 U.S. 164, 176, 128 S. Ct. 1598, 1607, 170
L. Ed. 2d 559 (2008). "A custodial arrest of a suspect based on
probable cause is a reasonable intrusion under the Fourth
Amendment; that intrusion being lawful, a search incident to the
arrest requires no additional justification." *Id*. at 177 (citation
omitted). Because the Court has found that a reasonable officer
could have determined that probable cause existed to arrest
Plaintiff for visiting a common nuisance, it follows that a
reasonable officer also could conclude that he had the authority
to search Plaintiff incident to the arrest. *See Stanberry v.
Morrison,* No. 13-3037, 2013 WL 5509177, at *3 (C.D. Ill. Oct. 4,
2013) (finding qualified immunity applied to unreasonable search
claim because "after performing the arrest, Defendant had no reason
to believe a patdown prior to transporting Plaintiff to the Quincy
Police Department constituted a clear violation of Plaintiff's
Fourth Amendment rights."). Scroth had no reason to believe that
performing an outer clothing pat-down of Plaintiff after arresting
him would constitute an illegal search. Nor did Roundtree have
reason to believe that a pat-down of Plaintiff while booking him
in at the Police Department would constitute an illegal search.
Therefore, Schroth and Roundtree are entitled to qualified
immunity on Plaintiff's unreasonable search claim.

CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment (DE #15) is **GRANTED**. The Clerk is **DIRECTED** to close this case.

DATED: **March 19, 2018**              **/s/ RUDY LOZANO, Judge**
                                       **United States District Court**